[S. F. No. 21210. In Bank. Oct. 29, 1963.]

HONOLULU OIL CORPORATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

Herbert W. Clark, Franklin C. Latcham, Morrison, Foerster, Holloway, Clinton & Clark and Roger W. Findley for Plaintiff and Appellant.

Forrest N. Shumway and Loren P. Oakes as Amici Curiae on behalf of Plaintiff and Appellant.

Stanley Mosk, Attorney General, James E. Sabine and Dan Kaufmann, Assistant Attorneys General, and Frank M. Keesling for Defendant and Respondent.

PEEK, J.—Plaintiff Honolulu Oil Corporation appeals from a judgment in favor of the defendant Franchise Tax Board of the State of California in an action by the company to recover alleged overpayments of the corporate franchise tax in each of the taxable years 1951, 1952, 1953, and 1954.

Honolulu Oil Corporation is a Delaware corporation with its principal offices located in San Francisco. During the years in question it engaged in exploration for, and extraction and sale of oil and gas in 15 states and the Dominion of Canada. In each of those years it originally computed its net income derived from sources in California by a separate accounting method. That is, it aggregated all of its receipts from the sale of petroleum products extracted from California wells, and

subtracted therefrom all direct expenses incurred in its California operations together with a share of certain overhead expenses which were common to its operations both within and without California. The income so determined was used as a measure of the franchise tax. (Rev. & Tax. Code, § 23151.[1])

Subsequently Honolulu concluded that its returns based on separate accounting in California were in error and, within the statutory time limits, sought to amend those returns. The amended returns are based on an allocation formula which requires the apportioning to California of a share of the company's total net income according to the distribution within California of the proportionate share of its property, payroll and sales. The amendments are claimed to be authorized by and consistent with section 24301 of the Revenue and Taxation Code, which provided for the allocation of total net income of an interstate business "[w]hen the income of a taxpayer subject to the tax imposed under this part is derived from or attributable to sources both within and without the State. . . ."

Honolulu's claims for refund, based on the amended returns, were denied by the Franchise Tax Board, and this suit was instituted for the recovery of the alleged overpayments. The sole issue here presented goes only to the question of which of the two methods, separate accounting or an allocation formula, can be properly applied in the instant case to determine the measure of the California tax. The parties concede that if Honolulu is entitled to employ an allocation formula, the one so utilized in preparing the amended returns is proper. Based thereon, the overpayments are stipulated as follows: 1951, $101,941; 1952, $75,952; 1953, $66,560; 1954, $148,661.

The use of a formula by Honolulu for purposes of determining its taxable income in California reduces that income substantially, largely because of the character of operations which are carried on in California, as distinguished from those out of state. While the California operation may generally be described as primarily production, with relatively high income, the out-of-state operations are best described as exploration and development with comparatively smaller current incomes and, in fact, on a net, overall basis, were

[1]Citations to code sections throughout are with reference to the codes prevailing when the cause of action herein arose. Section 24301 of the Revenue and Taxation Code is now section 25101 thereof.

conducted at a loss for the period involved. For the four years in question Honolulu realized a total net income from all operations of $16,744,397.70. The share allocable to California by the formula method employed in the amended returns is $8,868,039.00. By the separate accounting method used in the original returns by Honolulu, there was a total net income in California of $18,581,825.60.

There is no dispute as to Honolulu's activities during the years in question. An agreed and lengthy statement of facts was stipulated to by the parties, and the trial court found the matters stated therein to be true. It appears therefrom that Honolulu is not a true "integrated" oil company. Except for a relatively small amount of gasoline which it extracted from "wet" or "casinghead" gas it engaged in no refining operations. All of the oil and gas which it produced was sold to other companies, and no petroleum which it produced within or without California was moved by it across California borders. Originally its operations were confined entirely to California, but in recent years it has expanded its explorations to other areas, due to a claimed lack of virgin fields in California.

Honolulu's operations, whether within or without California, were controlled to a very considerable extent from its California offices. In addition, services such as accounting, purchasing of equipment, supplies and insurance and legal services were also centrally administered from California throughout the entire operation.

Honolulu's operations were divided into five geographical divisions, they being the California (California, Nevada and Utah, with the principal division office in San Francisco), Mid-Continent (Texas, New Mexico, Colorado, Nebraska and Oklahoma, with principal offices at Midland, Texas), Canadian (conducted as a joint venture with other oil companies, with main offices at Calgary, Alberta, Canada), Rocky Mountain (Montana and Wyoming, with offices at Billings, Montana), and Southeastern (Mississippi, Louisiana, Alabama, Florida and Tennessee, with offices at Jackson, Mississippi) Divisions. The California Division functioned as any other division, and although there is an identity of principal offices with the company itself, the California Division as such exercised no superior control over the other divisions. Each division manager worked closely with the company's executives. Albert C. Mattei, President of Honolulu, exercised a great amount of supervision over each division, and considerable

travel and other communications took place between Mr. Mattei and his staff on the one hand and the division managers and their staffs on the other.

The company itself, and generally the divisions also, functioned through departments, the basic departments being the Land, Engineering, Exploration, Gasoline, Legal and Accounting Departments. The Land Department, with main offices in San Francisco, has steadily grown as land acquisitions in states other than California have increased. During the period here involved Honolulu had substantially more land under its control in Texas and Canada than in California, while the holdings in New Mexico were substantially equal to those in California. Each division maintained its own offices, except the Canadian Division which operated through the joint venture offices. The division offices did certain field work, maintained certain records, prepared documents and rental checks for approval and execution at the San Francisco Office, and supplied data which permitted the central office to maintain and keep land records current.

The Engineering Department was primarily concerned with drilling and production of wells, and maintained staffs both in California and Texas. The actual drilling was done by independent contractors, with Honolulu's engineers acting in an advisory capacity. There was a considerable exchange of technology between the various divisions during the years in question.

An Exploration Department was headquartered in San Francisco, where approximately 40 per cent of the technically trained men in that department were employed. A large portion of the funds expended for exploration were so expended pursuant to a master contract negotiated in California with the United Geophysical Company for seismographic surveys. While that company actually performed its exploratory work in the field, it developed its findings in its laboratories within California. Honolulu obtained many advantages under its contract with United and, although only a minor part of field exploration work was carried on in California, the California Division was able to benefit materially from technical reports obtained from United's California laboratories. Substantially larger payments were made to United in behalf of operations in New Mexico, Texas and Mississippi than in California. United also maintained offices in Texas for the purpose of assisting Honolulu.

A Gasoline Department, which arranged for the disposition of "wet" or "casinghead" gas, maintained offices in California and Texas, with overall control exercised from San Francisco. Honolulu owns, or has an interest in several gasoline plants, which separate gasoline and other lighter petroleum gases (e.g., propane, butane) from casinghead gas. Such plants were located in California and in Texas, with a considerably larger investment in the Texas plants.

A Legal Department functioned at the company's main offices in San Francisco, and provided all legal services throughout the whole operation except in Texas where local attorneys provided some regular services for the Mid-Continent Division.

Practically all accounting, tax work and tax returns were performed and prepared in San Francisco under the supervision of the Accounting Department, although accountants were employed in Texas also.

Honolulu's personnel employment showed a gradual shift away from California to other states during the years in question, although 58 per cent of its personnel were still employed in California during the last year involved. Key personnel were hired or fired only after approval from executives in San Francisco, but division managers hired and fired other personnel. As new problems arose the best qualified man to do the job, regardless of the divisions concerned, was assigned thereto. Numerous reassignments and transfers of personnel were thus made throughout the entire areas of operation. All employees, except in the Mid-Continent Division, were paid out of the San Francisco offices. All primary payroll records were maintained in San Francisco, and all insurance and employee benefits were controlled and supervised in San Francisco.

While services, equipment and supplies were purchased locally throughout the various divisions, strict purchasing controls were exercised by the San Francisco offices. Certain purchase contracts, as in the case of automobiles, assured price and other advantages to Honolulu which would not have been possible to negotiate on an individual, state by state, or division by division basis.

During the years in question Honolulu was financially self-sufficient. Its central funding facilities were available to any particular area of operations, and were contributed to by income from all the company's sources. Throughout its history there has never been any separation of earnings and

surplus as between divisions. Tight fiscal control was exercised throughout all areas of operations by the company's executive officers.

Sales of all products were negotiated or approved before sale by the executive officers. All payments for products were made to the company's central account.

The operations of Honolulu herein differ from those of the Superior Oil Company (*Superior Oil Co.* v. *Franchise Tax Board, ante, p.* 406 [34 Cal.Rptr. 545, 386 P.2d 33]) only in matters of degree too minor to permit a valid distinction. It necessarily follows that what we held in that case is equally applicable here, and we cannot properly arrive at a different solution to the sole issue presented in the instant case from that arrived at in the *Superior Oil Company* case. For the same reason it is equally unnecessary to discourse at length on applicable rules set forth in that case.

As noted, the issue herein, as it was in the *Superior Oil Company* case, is whether Honolulu's business is unitary in nature, entitling it to report its California income by the employment of an allocation formula. The Franchise Tax Board contends that the factors of central management and the central performance of service functions are not sufficient in and of themselves to support a conclusion of a unitary operation; that unity at the operating level is essential to such a conclusion. But the decisional law, upon which the board relies, does not support its contention.

As stated in the *Superior Oil Company* case this court, in *Butler Brothers* v. *McColgan,* 17 Cal.2d 664, 678 [111 P.2d 334], held that the unitary nature of a business was "definitely" established by the presence of the following factors: "(1) Unity of ownership; (2) Unity of operation as evidenced by central purchasing, advertising, accounting and management divisions; and (3) Unity of use in its centralized executive force and general system of operation." Thus there are three unities which establish a unitary business. The first and third are manifestly present in the instant case, and the unity of operation to which the board apparently directs its contention also appears to be satisfied. As stated, the unity of operation is one "evidenced by central purchasing, advertising, accounting and management..." all of which, except for advertising, appear as a matter of record to have been centrally controlled in the instant case, and it does not appear that advertising was a factor in Honolulu's business.

But even if the board's contention goes directly to local operations, that is, that there must be a unity demonstrated as to the local production and limited processing operations, this too appears to be satisfied. Honolulu is not operating two distinct types of businesses, one being exploration and development with marked characteristics of an unitary operation, and the other being several local production and processing operations. All of its out-of-state production and processing is made possible as the result of its prior exploration and development, utilizing funds which became available through prior production of other wells, personnel and know-how from company-wide resources. Exploration and development are not an end in themselves, but are only the forerunner of production and processing in Honolulu's scheme to create revenue. Extensive intracompany assets and efforts were devoted to each producing well, wherever it may be located, and the mere fact that production and sale therefrom are a local operation does not transform that operation to something distinct and apart. To the contrary it becomes an integral part of the unitary business, and thereafter contributes its share to future exploration and development efforts in other areas.

Certainly Honolulu's operations must be deemed to be more unified at the level of local operations than those of Butler Brothers in *Butler Brothers* v. *McColgan, supra,* 17 Cal.2d 664. There, wholesale stores were locally and independently operated in several states, with central executive, advertising and purchasing functions in which they all shared expenses. Such operation was held to be unitary in character, and even individual incorporation of each house did not effect a change in character in *Edison California Stores, Inc.* v. *McColgan,* 30 Cal.2d 472 [183 P.2d 16]. The control exercised by Honolulu officers in San Francisco over local operations involving acquisition and sale of the company's products is much more extensive in the instant case than in either of the cited cases.

The board urges that in cases involving similar problems under the laws of other states, a different test has been announced by the United States Supreme Court than that employed in the *Butler Brothers* case. (See *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113 [41 S.Ct. 45, 65 L.Ed. 165].) But we are not here concerned with such matters. We are concerned with the specific provisions of the Revenue and Taxation Code and the decisional law which has

interpreted those provisions. This court is under no compulsion to employ the identical tests approved by the Supreme Court as to other states' statutes, as long as the test so employed in this state does not infringe constitutional rights. Nor has any persuasive basis for such an infringement been suggested. In fact the Supreme Court, in reviewing the constitutional issues in the *Butler Brothers* case approved the instant application of the law and affirmed the judgment. (*Butler Bros.* v. *McColgan,* 315 U.S. 501 [62 S.Ct. 701, 86 L.Ed. 991].)

The board also urges that an allocation formula should be resorted to only where it is impossible to make a separate accounting, or when a separate account cannot be reasonably computed. A similar contention was considered and rejected in *Superior Oil Co.* v. *Franchise Tax Board, ante,* p. 406, at p. 416 [34 Cal.Rptr. 545, 386 P.2d 33], and for the reasons stated in the opinion in that case the instant contention is likewise without merit.

█ Where '. . . the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are unitary. . . .'' (*Edison California Stores, Inc.* v. *McColgan, supra,* 30 Cal.2d 472, 481.) █ There can be no reasonable dispute that Honolulu's business done within the state is ''dependent upon or contributes'' to the business done without the state. We are thus compelled by the mandatory language of section 24301 of the Revenue and Taxation Code to the conclusion that in the instant circumstances, as a matter of law, Honolulu's income ''is derived from or attributable to sources both within and without the State.'' (See *Superior Oil Co.* v. *Franchise Tax Board, ante,* p. 406, at p. 416 [34 Cal.Rptr. 545, 386 P.2d 33].)

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

Respondent's petition for a rehearing was denied November 27, 1963.