[L. A. No. 26672.   In Bank.   Oct. 29, 1963.]

SUPERIOR OIL COMPANY, Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

Stanley Mosk, Attorney General, James E. Sabine and Dan Kaufmann, Assistant Attorneys General, and Frank M. Keesling for Defendant and Appellant.

Latham & Watkins, Henry C. Diehl, Ira M. Price II, C. Robert Wilmsen, John H. Hall and Ralph E. Smith for Plaintiff and Respondent.

Forrest N. Shumway and Loren P. Oakes as Amici Curiae on behalf of Plaintiff and Respondent.

PEEK, J.—The defendant Franchise Tax Board appeals from a judgment awarding to the plaintiff Superior Oil Company a tax refund of $502,645.48 including interest, claimed to constitute an excess levy of the corporate franchise tax for the company's fiscal year ending August 31, 1952.

The franchise tax is impressed annually on corporations for the privilege of exercising the corporate franchise within California. (Rev. & Tax. Code, § 23151.)[1]

The measure of the tax is limited to income reasonably attributable to sources in California. Section 24301 of the Revenue and Taxation Code as it read in part during the taxable year in question, provided as follows: "When the income of a taxpayer subject to the tax imposed under this part is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by an allocation upon

---

[1] Citations to code sections throughout are with reference to the codes prevailing on August 31, 1951.

the basis of sales, purchases, expenses of manufacture, payroll, value and situs of tangible property or by reference to any of these or other factors or by such other method of allocation as is fairly calculated to determine the net income derived from or attributable to sources within this State. . . .''

The issue presented both to the trial court and on this appeal is whether the plaintiff's operations in several jurisdictions, including California, are unitary in nature and thus subject to local taxation on a basis which allocates a portion of the overall net income to this state (Rev. & Tax. Code, § 24301) or whether, on the other hand, the local operations are sufficiently separate to justify local taxation on the net income derived from such separate, local operations.

Plaintiff takes the position that its operations are unitary with the result that the local allocated net income and taxes thereon are lesser amounts than the corresponding amounts which the board contends properly result from the claimed separate, local operations. It is conceded that if Superior is entitled to use an allocation formula on the basis that its overall operations are unitary, then the particular allocation of income which it urges, and determination of tax due therefrom, are correct.

The essential facts have been stipulated and are not in dispute.

Plaintiff is a California corporation with its principal place of business in Los Angeles. The franchise tax here involved is that for the tax year ending August 1952, based on plaintiff's earnings for its tax year ending August 31, 1951. During that period plaintiff's principal income was derived from the production and sale of petroleum and petroleum products in more than a score of states, including California, and in foreign countries. Other income was produced from a realty subdivision in California, from gains made on the sale of capital assets both within and without this state, and from dividends on stock investments.

In a true sense plaintiff is not an integrated oil company. That is, it refined and processed only a minor portion of its production. Generally, its raw petroleum was sold at the well site to other companies. All production in California was sold in California, and all out-of-state production was sold outside of California.

Plaintiff's income producing activities were centrally controlled from its executive offices in Los Angeles, as well as

were many administrative functions such as accounting, purchasing of equipment, supplies and insurance.

Personnel were moved frequently throughout the several states where plaintiff operated. At any given time only 20 per cent, more or less, of plaintiff's employees were employed primarily in California.

For the income year here involved plaintiff was required to file returns reporting its net income in eight other states, in addition to California. With respect to the returns filed in seven of such other states, and pursuant to the local requirements thereof, it computed its income by the use of the separate accounting method, deducting from the gross receipts derived from the production and sale of petroleum products in each state the expenses attributable thereto including a fixed share of the common overhead expenses. Losses from such operations ranged from $9,397.69 in Arkansas to $3,410,381.90 in Louisiana and only in one state, Mississippi, was a profit ($942,395.68) reported. In the eighth state, Kentucky, plaintiff employed a formula method which allocated a nominal portion of the integrated overall net income to that state. The method of computation in each of the several states was dependent only on local requirements, and was in no way affected by that employed in any other state.

In reporting its income during the year ending on August 31, 1951, petitioner employed the separate accounting method for those purely intrastate activities—the real estate subdivision project, sale of capital assets in California, and income from dividends. The allocation formula which it utilized as to its petroleum operations required that it total all receipts from those operations in all the states and countries involved, deducting therefrom the aggregate expenses in all the states and countries, and apportioning the remaining net income based upon the pro rata distribution within California of property, payroll and sales factors. This resulted in a net income attributable to the production and sale of petroleum products in California of $756,553.16, and a total net income from all sources attributable to California of $1,135,060.68.

By its separate accounting method the board determined that the net income from California sources was $10,-637,633.46, subject to some minor statutory adjustments not in issue. Accordingly, it imposed an additional tax assessment of $381,250.99, representing the differential in the tax calculated pursuant to the disputed accounting methods. Eventually the additional assessment was paid, under pro-

test, and the instant action was instituted to recover the same.

It might be noted that the circumstances surrounding Superior's particular income record vividly point up the effect of the accounting method to be utilized, not only as to the California tax, but also as to the gross tax payable in all of the various taxing states involved. For the tax year in question Superior had overall net earnings of, roughly, $3,200,000. If an allocation arrangement were employed in each taxing state involved, Superior would pay taxes to each of the various states based on such state's pro rata share of that amount, which shares could not exceed 100 per cent of the amount. On the other hand, if the separate accounting method were used in each state involved, then in six of the nine taxing states no tax would be paid (other than some nominal minimum), as losses were sustained in such states. In the other three states, including California, profits of $11,500,000 were realized and taxes in each such state would be payable on individual bases, the total of which bases would equal that amount. The unitary accounting method employing an allocation formula then, if applied uniformly, would result in a substantially smaller overall tax liability, as the total taxable basis would be substantially less, neglecting for the moment the differing rates and exemptions in the several states.

It would be of still greater benefit to Superior if it could employ a separate accounting method in the states wherein it suffered losses, which method it apparently has employed in six of the seven states wherein there were losses, and an allocation method in the taxing state or states where it has realized large profits, as in California. Superior's overall tax liability would be greatest if it were required to employ an allocation method in the states where losses were sustained, and a separate accounting method in the profit-making states. In any event it is Superior's contention that the board seeks to impose a tax on claimed separate earnings in California which are more than three times greater than its actual overall earnings, and that such imposition is inequitable and improper under the California law. Of course, we are not concerned in this proceeding with the propriety of the methods used to determine taxable income in the other states.

The narrow issue herein, in terms of the statute, is whether Superior's income is "derived from or attributable to sources both within and without the State." (Rev. & Tax.

Code, § 24301.) If such income can be so categorized then an allocation of total net income would naturally follow from the mandatory language of section 24301, and a separate accounting, as sought by the board, could not be approved.

Previously this court has had occasion to determine when separate accounting was proper. In *Butler Brothers* v. *McColgan*, 17 Cal.2d 664 [111 P.2d 334], the Franchise Tax Board assessed an additional tax based, in that case, on an allocation formula following a return by Butler Brothers on a separate accounting basis. The taxpayer paid and sought to recover. Judgment was for the board on a finding that the business was unitary in nature.

Butler Brothers was a corporation engaged in a wholesale merchandising business with outlets in several states, including California. Each outlet operated independently, including the purchase and sale of goods, but each was subjected to central executive control from the corporation's principal office in Chicago. The outlets shared in corporate overhead, executive salaries, central advertising, and the expenses of maintaining a central buying division, although the cost of each purchase and the expense incurred therein were chargeable to the individual outlets concerned. During the year in question the California operations suffered a loss, whereas the overall operations realized a profit. The corporation's separate return of its California business included the apportioned share of the common administrative expenses.

In affirming the judgment, this court stated at pages 667 and 668: "It is only if its business within this state is truly separate and distinct from its business without this state, so that the segregation of income may be made clearly and accurately, that the separate accounting method may properly be used. Where, however, interstate operations are carried on and that portion of the corporation's business done within the state cannot be clearly segregated from that done outside the state, the unit rule of assessment is employed as a device for allocating to the state for taxation its fair share of the taxable values of the taxpayer.... If there is any evidence to sustain a finding that the operations of appellant in California during the year 1935 contributed to the net income derived from its entire operations in the United States, then the entire business of appellant is so clearly unitary as to require a fair system of apportionment by the formula method in order to prevent overtaxation to the corporation or undertaxation by the state."

At page 678, the court concluded: "In accordance with the foregoing analysis it is our opinion that the unitary nature of appellant's business is definitely established by the presence of the following circumstances: (1) Unity of ownership; (2) Unity of operation as evidenced by central purchasing, advertising, accounting and management divisions; and (3) unity of use in its centralized executive force and general system of operation."

The foregoing three unities were described as the "elements of a unitary business" in *Edison California Stores, Inc.* v. *McColgan,* 30 Cal.2d 472 [183 P.2d 16]. In that case a situation similar to that in the *Butler Brothers* case prevailed, except that the retail business in each state was separately incorporated. The court concluded that the elements of central management, purchasing, distribution, store operations, and administrative factors were sufficient to hold that the operation was unitary in spite of the separate legal entities, and stated at page 481: "If the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are unitary. . . ." (See also *John Deere Plow Co.* v. *Franchise Tax Board,* 38 Cal.2d 214, 229 [238 P.2d 569].)

On the evidence submitted in the instant case and, as stated, not controverted, the trial court made extensive findings of fact, including a finding that "California business operations contributed substantially to the out-of-state portion" of its business in areas relating to executive policy making, administrative control, coordination of exploration activities, well production and land acquisition, training of technical personnel, specific scientific and technical development and testing laboratories, drilling operations and drilling equipment, manufacturing and sales, accounting, tax returns, personnel, insurance and purchasing.

The court also found that "Superior's California operations were substantially dependent upon the out-of-state operations" in areas relating to the borrowing of substantial funds on assets located outside of California in order to finance projects within California, the transfer of company funds from sources outside of California to finance projects within California, legal counseling provided by the chief counsel located in Texas and other attorneys in Washington, D. C., the supplying and control of tubular materials from Superior's Texas office and transfer of other materials to

California from company sources outside of California, fiscal control from Superior's Texas office for half of the year in question, geophysical technical information and services supplied to California from the company's Texas laboratories, certain land-lease controls supplied by offices in Texas, the transfer of valuable drilling equipment from out of state for California operations, the transfer of skilled personnel from out of state for purposes of performing services in California, and the supply, on a daily basis, of technical and other information to the company's California offices in order that executive and policy decisions could be made and overall control exercised.

In addition the court expressly found that the unities of ownership, operation and use existed in connection with Superior's overall business and that "[t]he business done by plaintiff within the State of California was not separate or distinct from its business done without this state."

Without setting forth in greater detail the very extensive record bearing on the foregoing findings, it will suffice to say that while the agreed factual statement furnishes some basis for controversy the record substantially supports the essential findings. Moreover, the board does not contend otherwise.

In view of the findings and the law applicable thereto as set forth in the excerpts from the prior decisions of this court it would appear to follow that the judgment herein must be affirmed. ■ The board, however, asserts that the test is not one of determining the existence of the three unities, but instead that the court must first determine that in order for the operations within the state to be an integral portion of a unitary business carried on within and without the state, it must appear that the operations within and without the state are "necessary and essential" to each other and to the functioning of the business as a whole. It then argues that only in those cases where the foregoing situation exists does it become impossible to make the computations necessary for a separate accounting for individual state tax purposes, and hence justify the employment of an allocation formula. In other words the argument appears to be that the employment of an allocation formula is justified only when the various local operations are so essential to the overall operations that it is impossible to make separate accounting computations. After so arguing the board then takes a somewhat inconsistent position and states that the issue herein is "whether Superior's income from its California petroleum producing

activities *can reasonably be computed separately* from its petroleum producing activities outside the state." (Italics added.)

It is obvious that the elements of necessity and essentiality upon which defendant's contention is predicated did not appear in the *Butler Brothers* and *Edison California Stores* cases, even to as great an extent as they appear herein. Defendant, however, relies upon language in the *Edison California Stores* case at page 479 where it is said, in making reference to the opinion of the United States Supreme Court in affirming the decision in the *Butler Brothers* case (315 U.S. 501 [62 S.Ct. 701, 86 L.Ed. 991]): "It was there declared that since all the factors in the conduct of Butler Brothers business were *essential* to the realization of profits, the business was properly treated as unitary." (Italics added.)

The use of the term "essential" in the foregoing excerpt was unfortunate and did not fairly describe the Supreme Court's views in the *Butler Brothers* case. That court did not state or hold that the business was unitary because the various local factors were essential to the overall operations, as defendant would have us believe. In fact the term "essential" was not used at any place in the opinion. The holding of the court was that "California was justified in assuming that the San Francisco branch *contributed its aliquot share* to the advantages of centralized management of this unitary enterprise and to the net income earned." (At p. 509.) (Italics added.) Primarily the Supreme Court was concerned with whether the allocation method taxed extraterritorial value or otherwise infringed upon the Fourteenth Amendment. It concluded that there was no infringement. In its view the test was not one based on essential activities, but rather one based on contributing activities, and this court arrived at a similar result in *Edison California Stores, Inc.* v. *McColgan, supra,* 30 Cal.2d 472, wherein it concluded at page 481 that operations are unitary if the business done within the state "is dependent upon or contributes to" the overall operations.

The board would next distinguish the instant case from other cases wherein unitary businesses were held to exist, on the basis of the interstate businesses involved. We may agree that there is room for the distinction which it urges, but such distinction is one without substance. In its argument in the *Butler Brothers* and *Edison California*

*Stores* cases the board points out that the product with which the taxpayers dealt moved in interstate traffic, whereas in the instant case the petroleum products moved only in intrastate traffic; that both in and out of California the products produced were sold where produced. No contention is made that Superior is not engaged in interstate business, but only that its products did not move in interstate traffic before being disposed of by Superior.

It is true that in *Butler Brothers* the goods sold in California were acquired from sources both from without and from within California but this was only a factor in determining that the business was unitary. None of the three unities announced in that case as determinative necessarily require the interstate movement of products. These, as stated, are unity of ownership, unity of operation as evidenced by central management and administration, and unity of use of its executive force and operational systems. Also in *Butler Brothers* the court further clarified the nature of the essential unities when it distinguished the modern judicial concept thereof in the following language at page 668: "In the early cases in which the unit rule first made its hesitating appearance there was always a physical link, a palpable unity of substance. ... Then in *Adams Express Co.* v. *Ohio State Auditor* (1897), *supra* [*Adams Express Co.* v. *Ohio State Auditor*, 165 U.S. 194 (17 S.Ct. 305, 41 L.Ed. 683)], the standard unity of substance was openly replaced by one of unity of use and management. This decision clearly recognized that in assessing tangible property for taxation, its value producing qualities in connection with other pieces of tangible property outside the state must be considered."

Superior's business primarily is the production and sale of petroleum products. Like Butler Brothers it sells its products locally. The difference, if any, therefore must relate to the manner of acquisition of such products. Butler Brothers was able to purchase its products in interstate trade. Superior however, because of the character of its business, cannot so acquire its product. It is only through a multitude of individual operations which precede and make possible the outflow of petroleum at a producing well that Superior is able to obtain possession of a product which it can market. While the actual recovery and sale of the crude oil are, perhaps, local activities, nevertheless very extensive interstate transactions are theretofore involved in the other individual operations

which make such production possible. The evidence here reveals that such essential factors as land acquisition, exploration, technology, testing, availability of equipment and personnel, financing and many others are definitely interstate in character. It must also be considered that each producing well in a particular state is the end product of interstate activities which may involve many other unproductive wells in many other states. Superior's products are thus acquired for the local market only as the result of interstate transactions to no less extent than were Butler Brothers' products made available at its local markets. It was not deemed necessary that Butler Brothers' goods be sold on an interstate basis for the unit rule to apply in that case, and the sale of Superior's products on the local market is likewise not determinative.

It appears to be the whole substance of the position urged by the board that we should no longer seek out a set of circumstances which, if found to exist, *require* by statutory mandate the application of an allocation formula. Instead, the board proposes that we declare a different set of circumstances which, if satisfied, would then require separate accounting. This is manifest by its insistence that if separate accounting is reasonably possible, it must prevail even if those circumstances which heretofore have been held to require an allocation formula are also present. Such a position is inconsistent with that previously urged by the board and adopted by this court in the *Butler Brothers* and *Edison California Stores* cases. No reason is suggested for departing from the established tests, other than that such departure will best serve the board's present purposes although there is no reason to believe that it will always work to the board's advantage. But regardless of the relative merits of a new and different test we are nevertheless directed by the Legislature, insofar as is discernible, to apply tests which are consistent with those heretofore established.

Section 24301 of the Revenue and Taxation Code instructs us as to the circumstances which require an allocation, rather than the contrary circumstances which, the board urges, require separate accounting. Thus it directs that income attributable to sources within the state "shall be determined by an allocation" when the income of a taxpayer "is derived from or attributable to sources both within and without the State," rather than that such income be determined by a separate accounting method when "California petroleum pro-

ducing activities can reasonably be computed separately from its petroleum producing activities outside the state,'' as urged by the board. The context of the statutory language is mandatory. Under the circumstances prevailing we would be required to conclude, even as a matter of law, that the income of the taxpayer was ''derived from or attributable to sources both within and without the State,'' and that separate accounting could not be employed.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

Appellant's petition for a rehearing was denied November 27, 1963.