[Civ. No. 23248. First Dist., Div. Three. Dec. 5, 1966.]

RKO TELERADIO PICTURES, INC., Plaintiff and Respondent, v. FRANCHISE TAX BOARD, Defendant and Appellant.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Appellant.

James J. Reilly for Plaintiff and Respondent.

SALSMAN, J.—Appellant Franchise Tax Board appeals from a judgment in favor of respondent RKO Teleradio Pictures, Inc., hereinafter referred to as RKO, directing a refund of taxes paid under protest for the income years 1945 and 1946.

The facts were stipulated. RKO's business is the production and distribution of motion pictures. It is a wholly owned subsidiary of Radio-Keith-Orpheum Corporation. Its principal offices are in New York City, where its managing officers control its entire business operation, involving all phases of the production and world-wide distribution of motion picture films. RKO produces motion pictures and distributes them

through its own distribution facilities, but it also distributes films produced by others. At all times relevant here, RKO produced its films in its own studios at Hollywood and Culver City. It made its studio facilities available to independent film producers, helped finance their production, and by agreement, distributed such films through its distribution network. The same personnel and facilities were used by RKO in the distribution of all films, whether produced by RKO or by others. RKO would have had to maintain the distribution system even if no outside production had been utilized, but of course the stream of films produced by others added substantially to RKO's gross income.

In the years 1939 to 1944 the Franchise Tax Commissioner permitted motion picture companies to apportion their income between that received from the production and distribution of their own films, and that received from the distribution of films produced by others, and in the determination of California income, to apply separate allocation formulas based upon factors described in Revenue and Taxation Code section 25101.[1] In 1945, however, the commissioner's office advised the motion picture industry, including respondent RKO, that the practice of using multiple allocation formulas in computing income from California sources would no longer be permitted, and that as to future taxable years a single formula would be required. Despite this warning, RKO determined to and did file its income tax returns for the years 1945 (filed in 1946) and 1946 (filed in 1947) and computed its income from California sources by use of a double formula rather than a single one as required by the commissioner.

In summary, RKO's method of stating its income involved a separation of its total income into two parts, first, income derived from the production and distribution of its own films, and second, income derived from the distribution of the films of others. With respect to income from the production and distribution of its own films RKO applied a formula which consisted of a comparison of its California property, payroll

---

[1]Section 25101 provides in part: ''When the income of a taxpayer subject to the tax imposed under this part is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property or by reference to any of these or other factors or by such other method of allocation as is fairly calculated to determine the net income derived from or attributable to sources within this State. . . .''

and revenues with its total property, payroll and revenues, both within and outside of California. RKO applied a second formula to income received from the distribution of others' films. Both formulas used the same revenue factor, a comparison of RKO's California revenues with its total revenues. But the second formula used for its California payroll and property factors only payroll and property relating to RKO's distribution activities.

In the examination of respondent's tax returns for 1945 and 1946 the Franchise Tax Board determined that a single three-factor formula should have been used by RKO in the computation of its California income. The board's formula consisted of a comparison of RKO's California property, payroll and revenues with RKO's total property, payroll and revenues, both within and outside of California. The board's method thus did not allow RKO to divide its income from the distribution of films between that received from distribution of films produced by it and that received from distribution of films produced by others. The board's formula resulted in a substantial increase in RKO's taxes.

The trial court accepted the stipulated facts as true, and concluded that the production and distribution of motion pictures owned by RKO was a separate and distinct operation from the distribution of pictures owned and produced by independent producers; that the application of a single formula to the separate and distinct operations of RKO to determine its California income was arbitrary, unreasonable and resulted in a tax upon extra-territorial values, and that a fair and reasonable tax would result from the application of the double formula used by respondent in its calculation of California income.

The appellant board contends that RKO was operating a single unitary business consisting of the production and distribution of motion pictures; that formula allocation of its income is mandatory under Revenue and Taxation Code section 25101, and that separate accounting in allocating the income of a unitary business is not permissible. Respondent, on the other hand, takes the position, as it successfully urged in the trial court, that the production by it of motion pictures in California and distribution of its own product throughout the world is a unitary business subject to the use of one formula, while the distribution of pictures produced and owned by

others is a separate and distinct operation to which a separate formula is applicable.

The decisive issue in the case is whether respondent was engaged in a single unitary business, or in two separate and distinct business operations. As we have seen, the trial court sustained respondent's contentions, and found that it was in fact engaged in two separate and distinct business operations, and that a fair tax would result from the application of separate formulas to determine California income. The facts, however, were stipulated. There was no dispute about them, and although some oral testimony was received, no factual question was raised. The trial court's findings of fact are confined to a single line, and merely recite that the stipulated facts are accepted as true. Where, as here, there is no dispute as to the facts, the trial court's findings amount only to conclusions of law, and therefore are not binding upon us. (*San Diego T. & S. Bank* v. *County of San Diego,* 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416] ; *Leis* v. *City & County of San Francisco,* 213 Cal. 256, 258 [2 P.2d 26] ; *Household Finance Corp.* v. *Franchise Tax Board,* 230 Cal.App.2d 926, 931 [41 Cal.Rptr. 565] ; 33 Cal. L. Rev. 646, 648.) ■ Upon the stipulated facts, the only conclusion that can be reached here is that respondent was engaged in a single unitary business as a matter of law, and that the application of a single formula embodying factors described in Revenue and Taxation Code section 25101 results in a fair allocation to California of a share of respondent's income.

The Supreme Court of the United States has repeatedly held that a corporation whose income results from a series of transactions involving manufacture in one state with sales in other states is engaged in a unitary business. (See *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113 [65 L.Ed. 165, 41 S.Ct. 45] ; *Bass etc. Ltd.* v. *Tax Com.,* 266 U.S. 271 [69 L.Ed. 282, 45 S.Ct. 82].) Our Supreme Court has reached the same conclusion. Thus, in *Butler Brothers* v. *McColgan,* 17 Cal.2d 664 [111 P.2d 334] (affirmed by the United States Supreme Court in *Butler Brothers* v. *McColgan,* 315 U.S. 501 [86 L.Ed. 991, 62 S.Ct. 701]) our court held that the appellant there was engaged in a single unitary business. In that case the corporation maintained wholesale distributing houses in different states, each serving a separate trading area, and where each handled its own sales, credit and collections, and maintained its own books of account. There was a unity of the whole,

however, as evidenced by such common factors as executive salaries, central purchasing and advertising, as well as other items of general corporate expense. The court found a unity of ownership, a unity of operation and a unity of use (p. 678), and determined that the corporation was engaged in a unitary business and that formula allocation of its income was appropriate. Later cases follow the rule of *Butler Brothers.* (See *Edison California Stores, Inc.* v. *McColgan,* 30 Cal.2d 472 [183 P.2d 16]; *John Deere Plow Co.* v. *Franchise Tax Board,* 38 Cal.2d 214, 223-224 [238 P.2d 569], and cases cited; *Household Finance Corp.* v. *Franchise Tax Board, supra.*) In *Edison California Stores, Inc.,* at page 481, the court pointed out that if the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the corporation's operations are unitary.

The unities of ownership, operation and use described in *Butler Brothers* are clearly present here. We are concerned here with a single corporate entity having a single corporate income. Thus unity of ownership is obvious and cannot be disputed. Unity of operation appears from the stipulated facts, which disclose the responsibility of RKO's officers for its total management; their control of its operations, in California and elsewhere, including both production and distribution activities, and the use of the same personnel, accounting and record keeping facilities in all of its operations. Unity of use, the third element mentioned in *Butler Brothers* is established by the stipulated facts describing RKO's operations, and the further stipulated fact that the same procedures were followed by RKO in the distribution of the films of others as were followed in the distribution of its own product. Moreover, it clearly appears in the record that RKO's distribution of films owned by others was an important segment of its business because earnings from that source helped to pay the cost of maintaining its world-wide distribution system. Since much of this independent production came about because of RKO's rental of its studios located in this state, and some of it was financed by RKO, it is clear that this portion of RKO's business, locally generated, contributed to its operations without the state, and confirms our conclusion that its business was a unitary one. (See *Edison California Stores, Inc.* v. *McColgan, supra,* at p. 481.)

Respondent does not directly contend that it is not engaged

in a unitary business. Rather, it takes the position that it is engaged in two separate businesses, each unitary in character, and contends that it may split its total income into two segments and apply a separate formula to each for the purpose of allocating a share of its income to California. But the effect of this argument is to say that, on facts here present, a separate accounting of income receipts, segregated as to source, is a permissible step in determining its California income.

■ The language of Revenue and Taxation Code section 25101 clearly states that where income of a taxpayer ''. . . is derived from or attributable to sources both within and without the State . . .'' the California income shall be determined by an allocation upon the basis of factors set forth in the code section. This statutory requirement is mandatory, and where, as here, the total income is derived from sources both within and without the state, separate accounting may not be employed. (*Superior Oil Co.* v. *Franchise Tax Board,* 60 Cal. 2d 406 [34 Cal.Rptr. 545, 386 P.2d 33] ; see also *Honolulu Oil Corp.* v. *Franchise Tax Board,* 60 Cal.2d 417, 425 [34 Cal. Rptr. 552, 386 P.2d 40] ; *Household Finance Corp.* v. *Franchise Tax Board, supra,* at p. 929.)

Upon the stipulated facts in our record, we conclude that respondent is engaged in a single unitary business; that its income is derived from sources both within and without this state; that the determination of its California income by means of an allocation formula is mandatory by the terms of Revenue and Taxation Code section 25101, and that the separate accounting for which respondent contends cannot be approved.

■ Although formula allocation of income is made mandatory by section 25101 where the corporate income is derived from sources both within and without the state, any formula used is subject to the fundamental requirement that it not be intrinsically arbitrary, and it must not produce an unreasonable result. (*Butler Brothers* v. *McColgan, supra,* 17 Cal.2d 664 at p. 671.) This rule furnishes the foundation upon which respondent bases its argument that the board's formula applied here does reach an unreasonable result. In this connection respondent presents various tables showing its gross income and its California income, segregated in each case to reflect separately the income received from distribution of its own films and income received from the distribution of the films of others. Applying property, payroll and sales factors to

these results, respondent arrives at percentage factors for each which allocate to California substantially less of its gross income than results from the board's application of a single formula. But the mere fact that application of a single formula may result in a larger tax than would be derived if two formulas were applied does not show that use of a single formula is arbitrary or unfair. In *Butler Brothers,* separate accounting disclosed a large loss from California operations, but application of a single formula to *Butler Brothers'* unitary business attributed a large share of its income to California. This result was upheld by our Supreme Court, and likewise by the United States Supreme Court. In like manner, separate accounting, contended for by the state, would have attributed large California incomes to the corporations in both the *Honolulu Oil* and *Superior Oil* cases, *supra,* but the court consistently held that this result was not permissible under the mandatory language of section 25101.

The Franchise Tax Board is given discretion in the selection of the factors to be utilized in a tax formula (*El Dorado Oil Works* v. *McColgan,* 34 Cal.2d 731, 736 [215 P.2d 4]) and where, as here, the taxpayer contends that the formula is arbitrary and reaches an unreasonable result, the burden is on the taxpayer to establish such facts by clear and convincing evidence. It has been said that the taxpayer's evidence must go to each and every element of the formula equation and show that the formula unfairly allocates corporate income to California. (*Edison California Stores, Inc.* v. *McColgan, supra,* 30 Cal.2d 472 at p. 479.) No such showing is made here. RKO has shown only that a greater share of its income is made attributable to California sources by use of the board's single formula, whereas a segregation of income according to source and the use of separate formulas result in less income subject to the California tax.

Respondent also contends that the board's notices of assessment were not issued within the four-year period prescribed by Revenue and Taxation Code section 25663 and that the extension of time allowed by section 25663a has no application to our facts. Section 25663a is applicable to those cases where the taxpayer agrees with the United States Commissioner of Internal Revenue for an extension of time for proposing and assessing deficiencies in federal income tax, and allows the board a period of six months after the agreed period for assessing deficiencies in federal income tax within

which to mail its notices. Here RKO did agree with federal authorities for an extension of time. It is undisputed that the board mailed its notices of assessment within six months after expiration of the time period agreed upon between RKO and the federal tax service. But respondent argues that the board may only assert a deficiency based upon a change in income made after federal audit, and that since the impact of federal adjustments here had but a slight effect on the state tax, section 25663a cannot apply. We find no merit in this argument, nor does respondent cite any persuasive authority in support of such a restrictive interpretation. The statute, by reasonable inference, contemplates the use by state tax authorities of all information gained through federal tax audits, so that the state, and its taxpayers as a whole, may thereby be saved both time and expense in the administration of the state's tax laws. Moreover, by state use of federal tax information, the interests of the particular taxpayer whose return is in question are served, in that he, too, is saved the time and expense of a dual audit of his personal and business affairs, and may in some cases ascertain errors in his state tax return sufficient to justify a claim for refund. (See *Richfield Oil Corp.* v. *Franchise Tax Board*, 169 Cal.App.2d 331, 337 [337 P.2d 237].) Here the board was in no position to issue its notices of assessment until after completion of the federal audit, because federal adjustments in such items as payroll and property depreciation might readily affect factors of payroll and property used in the board's formula. To require the board to make its assessments while federal audit is pending would nullify the provisions of section 25663a and deprive both the state and the taxpayer of the beneficial effects of the statute.

Finally, respondent urges that appellant was guilty of laches and hence is not entitled to the taxes assessed. Here respondent argues that it lacked notice that its use of a double allocation formula would not be allowed, and that it was thereby prevented from mitigating its federal income taxes for the years in question by giving effect to appellant's later assessments. This, they imply, shows inequity and prejudice to them. ■ But there is nothing in our record to show what, if any, federal tax advantage respondent could have obtained had the state's tax assessments been known at the time respondent's federal tax proceedings were concluded. Thus, no prejudice is shown. Absent some showing of prejudice a claim of laches may not be successfully maintained. (*Security T. &*

*S. Bank* v. *Southern Pac. R.R. Co.*, 214 Cal. 81, 88 [3 P.2d 1015].) Moreover, as noted in the stipulated facts, respondent did have notice that the use of separate allocation formulas with respect to pictures produced and distributed on the one hand, and films distributed but not produced on the other, would not be permitted in the future. There was nothing retroactive about this warning. It had application only to future income years, including the years in issue here. Nevertheless, respondent voluntarily elected to make its own rules in submitting its tax returns. It must abide the consequences. We see no room for the application of the equitable doctrine of laches to the facts in this record.

The judgment is reversed.

Draper, P. J., and Devine, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 1, 1967.