STATE of Alaska, DEPARTMENT OF
REVENUE, Petitioner and
Cross-Respondent,

v.

AMOCO PRODUCTION COMPANY,
Respondent and Cross-Petitioner.

Nos. 6567, 6568.

Supreme Court of Alaska.

Jan. 6, 1984.

David T. LeBlond, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner and cross-respondent.

Robert L. Manley and Richard O. Gantz, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for respondent and cross-petitioner.

William B. Rozell, John F. Clough, III, Faulkner, Banfield, Doogan & Holmes, Juneau, for amicus curiae Phillips Petroleum.

Before BURKE, C.J., RABINOWITZ, and MATTHEWS, JJ., and RIPLEY and JOHNSTONE, Superior Court Judges.*

## OPINION

BURKE, Chief Justice.

Amoco Production Company [Amoco], a wholly owned subsidiary of Standard Oil Company of Indiana, is incorporated in Delaware and licensed to do business in Alaska. Amoco's principal activities in Alaska are the exploration for and the production of oil and gas. Amoco filed its corporate income tax returns for the years 1971 through 1974 using the separate accounting method. Because Amoco's returns showed losses for all four years, it paid no state income taxes.

In November, 1976, the Department of Revenue notified Amoco that it intended to assess corporate income taxes for the years 1971 through 1974 using the apportionment formula method contained in AS 43.20.130 (repealed 1975). Amoco filed a timely protest and an informal conference was held in January, 1977. In June, 1977, the Field Audit Manager informed Amoco by letter that the three factor apportionment formula had been properly applied and that Amoco owed $528,160.00 in back taxes plus $105,754.00 in interest.

Amoco paid the tax and interest under protest and filed a Notice of Grievance and Request for Hearing before the Department of Revenue. The protest hearing was held in May, 1978, and the Hearing Examiner in December, 1979, affirmed the assessments.

Amoco made timely appeal to the superior court which issued its decision in November, 1981. The superior court found that although the proper method of tax assessment in this case was formulary apportionment rather than separate accounting, the state had improperly applied the apportionment formula in this case. Specifically, the court found that the state should not have included non-producing oil and gas leases (located primarily on the North Slope) in the property factor's numerator and denominator since the property was not "used in this state" as required under AS 43.20.130(b). Because the leases were not presently capable of generating income for Amoco, the court also concluded that the formula allocated a disproportionate amount of income to Alaska and that Amoco's due process rights were thereby violated.

The superior court reversed the decision of the Hearing Examiner in part and remanded the case to the Audit Division of the Department of Taxation with instructions to recompute Amoco's income tax liability under the apportionment formula method by excluding the value of the non-

---

* Ripley and Johnstone, Superior Court Judges, sitting by assignment made pursuant to Article IV, section 16, of the Constitution of Alaska.

producing oil and gas leases from the property factor.

The state petitioned for review of the superior court decision and Amoco cross-petitioned.[1] The state argues on review that the superior court erred when it concluded that inclusion of the value of non-productive oil and gas leases in the apportionment formula's property factor is contrary to AS 43.20.130(b) and violative of Amoco's due process rights. Amoco argues on cross-petition that the superior court erred when it held that Amoco was not entitled to utilize the separate accounting method in computing its income taxes. Amoco also seeks an order from this court directing the state to comply with the superior court's order to supplement the administrative record.

For the reasons expressed below, we affirm the superior court insofar as it upheld the Department of Revenue's use of formulary apportionment. As to the inclusion of non-producing leaseholds in the apportionment formula, we reverse. We hold that the non-producing leaseholds were properly included in the apportionment formula by the Department of Revenue.

## I.  FORMULARY APPORTIONMENT

The Department of Revenue and the superior court both found that Amoco was not entitled to use separate accounting to compute its tax liability from 1971 to 1974. Amoco argued before both these tribunals and before this court that Alaska's statutory scheme, as it existed during the tax years in question, provided Amoco with the option of using the separate accounting method.

Amoco admits that it was in unity with the other wholly owned subsidiaries of the vertically integrated worldwide oil company of Standard Oil of Indiana. A unitary company was normally required under the then existing statutory scheme to use formulary apportionment in computing Alaska income tax. AS 43.20.130. However, under AS 43.20.060 (repealed 1975) separate

accounting could be used in narrowly defined circumstances.

AS 43.20.060 read:

If a taxpayer's gross income is derived from sources both inside and outside the state and the part inside is so separate and distinct from and unconnected with the part outside that the net income from the part inside can be determined without regard to the part outside, then the part outside the state shall not be considered in computing the income tax and § 130(a)–(f) of this chapter is not applicable.

Amoco argues that because all of the oil and gas produced by Amoco in Alaska was sold in Alaska, its income from Alaska sales was sufficiently separate and distinct from the rest of the unitary business' non-Alaska income to warrant application of AS 43.20.060.

■ The fact that the sales income could be geographically segregated is insufficient to warrant application of AS 43.20.-060. Other forms of income connected to Amoco's Alaska operations were not as separate and distinct from income generated outside the state.

■ In computing the net income in Alaska, Amoco apportioned a pro-rata share of the unitary business' general overhead expenses to the Alaska operations in the 1971 through 1974 income tax returns. In this regard, the superior court found that

Amoco's substantial pro-rata overhead charges attributed to the Alaska operations shows heavy dependence on management and technical services performed outside the state. Management of the company is centralized, with major decisions being made by the executive offices outside Alaska. The Alaska operations depended on a centralized accounting department, tax department and legal staff outside the state. Amoco provides the technological expertise for both

---

**1.** The appeal originally filed was dismissed since the superior court decision was a non-final order. *See City and Borough of Juneau v.* *Thibodeau,* 595 P.2d 626 (Alaska 1979). A petition and cross-petition were subsequently granted.

exploration and production in the state, and supplied financial resources to carry on the highly capital-intensive activities of oil exploration and production.

The record establishes a reasonable basis in the Department's determination that Amoco's Alaska income was not sufficiently "separate and distinct from ... and unconnected with" its non-Alaska income so as to make AS 43.20.060 applicable.[2] We therefore affirm the superior court insofar as it upheld the Department's determination that formulary apportionment under AS 43.20.130 was the appropriate method to use in computing Amoco's taxable income.

## II. INCLUSION OF NON-PRODUCING LEASEHOLDS IN THE APPORTIONMENT FORMULA.

Amoco contends that the value of its leaseholds in Alaska that are not producing oil or gas should not have been included in the apportionment formula's property factor. It argues first that such leaseholds are not included within the statutory definition of the property factor, which requires property to be "used." Alternatively, even if within the statute, Amoco argues that inclusion of their value in the apportionment formula violates Amoco's due process rights.

The Department of Revenue rejected both of these arguments. The superior court, however, reversed the Department of Revenue. It found that non-producing leaseholds were not "used" as required by the statute. It therefore remanded the case to the Department to recompute income tax liability with these leases excluded from the property factor. For the reasons discussed below, we reverse on this

issue. We hold the non-producing leases were properly included in the property factor under the statute, and that such inclusion is constitutional.

### A. Statutory Analysis

In 1959, Alaska substantially adopted the Uniform Division of Income for Tax Purposes Act [UDITPA] which was contained in AS 43.20.051–.150 (repealed 1975). AS 43.20.130 provided for the allocation of business income through use of a three factor apportionment formula.[3] AS 43.20.-130 provided in part:

(a) All business income which cannot be directly apportioned and allocated to this state shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator which is three.

(b) *The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used* in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property *owned or rented and used* during the tax period....

(Emphasis added).

The relevant regulations in effect during most of the tax years in question were 15 AAC 10.100 and .120 (effective 5/25/72, repealed 1978). 15 AAC 10.100 provided in part:

(b) The term "real and tangible personal property" includes lands, buildings, ma-

---

2. Whether Amoco qualified under AS 43.20.060 does not present an issue of strict statutory interpretation. Rather, it involves an analysis of the factual circumstances of Amoco's activities, a question involving the particularized experience and knowledge of the administrative personnel. Thus, the reasonable basis standard of review is appropriate. *Kodiak Western Airlines, Inc. v. Bob Harris Flying Service, Inc.*, 592 P.2d 1200, 1203 (Alaska 1979).

3. In 1970, Alaska adopted the Multistate Tax Compact, (enacted as AS 43.19.010) which is basically a restatement of the UDITPA with a few minor changes. Because the apportionment formula contained in the Multistate Tax Compact at Article IV is virtually identical to that contained in the UDITPA, citations will be made only to the UDITPA. In any event, it would appear that the Multistate Tax Compact is inapplicable in this case since Amoco elected to apportion and allocate its income without reference to it. *See* AS 43.19.010 Art. III, § 1.

chinery, stocks of goods, equipment, and other real and tangible personal property *used in connection with the production of business income....*

(Emphasis added). 15 AAC 10.120 provided in part:

(a) The numerator of the property factor shall include the average value of the taxpayer's real and tangible personal property in this state during the tax period *used, is available for use, or is capable of being used for the production of business income.*

(Emphasis added).[4]

The issue, therefore, is whether oil and gas leaseholds on which no recoverable quantities of oil and gas have yet been discovered are "used" for purposes of AS 43.20.130(b). We conclude that when the objective of the apportionment formula is considered, such leaseholds are properly included.[5]

The economic theory underlying the formula is that the dollar value of the unitary business' capital investments, labor costs, and sales within the state, when compared to the business' total capital investments, labor costs and sales everywhere will roughly reflect the fraction of total income that is attributable to the business' in-state activities. These property, payroll and sales factors are merely indicative of the business' income producing capabilities. They are not intended to reflect the business' precise sources of income for any particular year. "The factors in an apportionment formula represent an attempt to relate the taxpayer's presence within the state to his presence everywhere." Peckron, *Apportionment Factors Employed by States in the Computation of Corporate Income Tax*, 3 J. Corp. Tax'n 388, 392 (1977); *See State Taxation of Interstate*

*Businesses and the Multistate Tax Compact: The Search for a Delicate Uniformity*, 11 Colum.J.L. & Soc.Probs. 231, 236 (1975). "[E]conomists agree that property, representing the cost of capital, is one element in the production of income." Note, *State Taxation of Interstate Commerce and Apportionment of Income: The Iowa Formula Under Attack*, 4 J.Corp.L. 125, 134 (1978). "Furthermore, the value of property used by a taxpayer in a particular state, whether owned or leased, is some measure of the relative importance of the taxpayer's activities in that state." Keesling and Warren, *California's Uniform Division of Income for Tax Purposes Act*, 15 UCLA L.Rev. 655, 657 (1967).

Support for this interpretation of the three factor formula is found in the recent United States Supreme Court opinion on this subject, *Container Corp. of America v. Franchise Tax Board*, —— U.S. ——, ——, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545, 553 (1983):

The unitary business/formula apportionment method is a very different approach to the problem of taxing businesses operating in more than one jurisdiction. It rejects geographical or transactional accounting, and instead calculates the local tax base by first defining the scope of the "unitary business" of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that "unitary business" between the taxing jurisdiction and the rest of the world *on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction.*

(Emphasis added).

The non-producing oil and gas leases are an example of nonobvious contributions to

---

**4.** These regulations were repealed and replaced in 1978 with 15 AAC 19.141, .151 and .171. Amoco relied heavily upon the 1978 regulation, which states that property under construction during the tax period must be excluded from the property factor until the property is actually used in the regular course of the taxpayer's business. 15 AAC 19.151(b). This regulation, however, is of little relevance to the issue before

the court since it was not effective during the tax years in question.

**5.** The resolution of this issue turns on statutory interpretation. As such, the "independent judgment standard of review is appropriate." *National Bank of Alaska v. State, Department of Revenue*, 642 P.2d 811, 815 (Alaska 1983).

Amoco's production of income. The exploration and development of what later turn out to be unproductive oil or gas wells is a necessary and integral part of Amoco's eventual discovery and exploration of productive oil and gas wells.[6] To say that only property values associated with oil and gas leases which are known to contain recoverable quantities of oil and gas should be included within the property factor is to ignore the actual business activities that lead up to Amoco's ability to derive oil and gas income.[7] As was stated in *Superior Oil Co. v. Franchise Tax Board*, 60 Cal.2d 406, 34 Cal.Rptr. 545, 551, 386 P.2d 33, 39 (1963), "[i]t must also be considered that each producing well in a particular state is the end product of interstate activities which may involve many other unproductive wells in many other states."[8]

The value of non-producing leaseholds is includable in the property factor of the apportionment formula. To interpret the word "used" contained in AS 43.20.130(b) to exclude such leaseholds is overly restrictive and not consonant with the realities of oil and gas production. We therefore reverse the superior court's holding on this issue and instead affirm the agency's decision that non-producing oil and gas leases are "used" by Amoco within the meaning of AS 43.20.130(b).

### B. *Constitutionality*

■■■ Having determined that non-producing leaseholds are within the statutory apportionment formula, we must then determine whether inclusion of the value of these leaseholds violates Amoco's due process rights.[9]

**6.** Amoco, in a summation argument before the Department of Revenue, commented "Certainly, we hope to find some oil up there and we hope to remedy this situation...."

**7.** Of some relevance is the fact that the value included in the apportionment formula reflects the fact that the leases are not producing. AS 43.20.130(b) provided that rented property includable within the property factor is valued at "eight times the net annual rental rate." In the years in which the lessee has not drilled and obtained production, a flat rate delay rental is assessed. Only after a well is successfully drilled will the lessee pay additional rental in the form of a royalty. In addition to these two separate rents, the lessee pays a lease bonus at the outset which is added to the property factor but not multiplied by eight. In the Matter of Louisiana Land and Exploration Co., No. 79-38 (Alaska Department of Revenue, 1979). *Cf.* 15 AAC 19.191(c) (effective 4/14/82).

**8.** The California State Board of Equalization found non-producing leaseholds to be "used" within the meaning of the formulary apportionment statute in that state. *Appeal of* Richfield Oil Corporation, (California State Board of Equalization, November 17, 1964); *Appeal of* Union Oil Company of California, (California State Board of Equalization, November 17, 1964). In the *Richfield Oil* decision, the California Board noted the value of non-producing leases:

Aside from the fact that the acquisition of new lands, much of which will prove to be unproductive, is an essential element in the process of discovering new oil sources, appellant has vividly demonstrated the many other

contributions that such acreage makes to the ultimate realization of income. Appellant is not simply acquiring land and blindly drilling holes. Every investment that it makes is a reasoned decision, a decision made on the best available information. Without the information derived from unproductive as well as productive areas, it is reasonable to believe that the effectiveness and efficiency of appellant's exploration program would be diminished with a resulting increase in the cost of producing crude oil.

*Richfield Oil* at 4.

**9.** Amoco also alludes to a due process violation simply by the Department's use of formulary apportionment instead of separate accounting. This argument is without merit. Under the due process and commerce clauses,

[i]f a company is a unitary-business, then a State may apply an apportionment formula to the taxpayer's total income in order to obtain a "rough approximation" of the corporate income that is "reasonably related to the activities conducted within the taxing State." *Moorman Mfg. Co. v. Bair*, 437 U.S. [267] at 273, 57 L.Ed.2d 197, 98 S.Ct. 2340 [at 2344]. *Exxon Corp. v. Wisconsin Dept. of Revenue*, 447 U.S. 207, 223, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66, 81 (1980).

As discussed in Section I above, Amoco did not attack the court's factual findings demonstrating the existence of a unitary business operation. Since the court's findings were sufficient to demonstrate the existence of the unitary character of Amoco's business operations, Amoco cannot successfully argue that the use of formulary apportionment in itself violates due process.

■ Due process requires that an apportionment formula be fair. *Container Corp. of America v. Franchise Tax Board,* — U.S. —, —, 103 S.Ct. at 2933, 2942, 77 L.Ed.2d at 545, 556 (1983); *Sjong v. State, Department of Revenue,* 622 P.2d 967, 975 (Alaska 1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982). In *Container Corp.,* the United States Supreme Court elaborated on this fairness requirement:

> The Constitution does not invalidate an apportionment formula whenever it may result in taxation of some income that did not have its source in the taxing State.... Nevertheless, we will strike down the application of an apportionment formula if the taxpayer can prove by clear and cogent evidence that the income attributed to the State is in fact out of all appropriate proportions to the business transacted in that State, or has led to a grossly distorted result.

— U.S. at —, 103 S.Ct. at 2942, 77 L.Ed.2d at 556 (citations omitted).

Amoco contends that the inclusion of the non-productive oil and gas leases results in income being attributed to Alaska which is "out of all appropriate proportions to the business transacted" in the state. We conclude, however, that Amoco has not proven by clear and cogent evidence that such disproportion or gross distortion has occurred here.

The superior court noted that the property factor was three to five times as large as the payroll factor and roughly seven to eleven times as large as the sales factor. The superior court concluded that since the bulk of the value included within the property factor was attributable to non-producing leases, the apportionment formula allocated income out of all proportion to the business transacted in the state.

The superior court erroneously focused upon the relative values of the property, payroll and sales factors. The fact that the property factor is larger in proportion to the sales and payroll figures merely reflects the fact that Amoco's business activities in this state are highly capital intensive. The fact that only an average of 4.7% of Amoco's total property worldwide consists of non-productive leases does not mean that Alaska's larger percentage is somehow skewed or distorted. Rather these figures reflect the recent acquisition by a multinational oil company of a large amount of land in a remote and unexplored area in the world, which held the potential of generating substantial income to the corporation.[10] Although perhaps with hindsight the lease acquisitions may not have been profitable, there can be no doubt that in the past they were viewed as a preliminary step in the generation of income.

■ When the non-producing leaseholds are included in the property factor, the result is the apportionment of approximately .3% more worldwide income to Alaska. Such increase does not result in income attribution to Alaska out of all appropriate proportions to the business transacted in the state, particularly since the leasehold acquisitions themselves can properly be considered Alaskan business transactions.[11]

Because inclusion of the non-producing leases in the apportionment formula was not shown by Amoco to produce an income attribution out of all appropriate proportions, we reverse the superior court's determination on this issue. Due process is not a bar to the Department of Revenue's inclusion of these leaseholds in the apportionment formula.

## III. SUPPLEMENTATION OF ADMINISTRATIVE RECORD

Amoco seeks an order of this court to the Department of Revenue Hearing Examiner to supplement the administrative record.

10. When questioned at the hearing about the large percentage of non-producing leases, Amoco responded that it was due in part to the fact that exploration activities on the North Slope could only be undertaken in winter.

11. Amoco in its tax returns for 1973 and 1974 reported gains from the sale of overriding royalty interests on the North Slope, a region in which Amoco had no production.

The superior court had ordered the Department Examiner to supplement the record on June 4, 1981.

 A motion to enforce the superior court's order properly lies within that court's jurisdiction. This matter is not one which requires "appellate" action. While Amoco did renew its motion to correct the record, it did not seek enforcement of the order at the superior court level. Therefore, there is no lower court action for this court to review on this issue.

AFFIRMED in part; REVERSED in part.

COMPTON and MOORE, JJ., not participating.