[No. A017684. First Dist., Div. Three. Oct. 18, 1984.]

F. W. WOOLWORTH CO., Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

**COUNSEL**

McCutchen, Doyle, Brown & Enersen, John B. Lowry, John R. Reese, Diane A. Konigsberg and Michael D. Bray for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Timothy G. Laddish, Deputy Attorney General, for Defendant and Respondent.

OPINION

**SCOTT, J.**—This appeal poses the issue of whether F. W. Woolworth Co. (Woolworth U.S.), a New York corporation doing business in California, was engaged in a unitary business with F. W. Woolworth Co., Limited (Woolworth Canada), a Canadian corporation, during the years 1961 through 1964. The case has its genesis in tax assessments made by the State of California Franchise Tax Board, based on its determination that appellant Woolworth U.S. and Woolworth Canada were engaged in a unitary business during the years in question. For practical purposes, this tax decision meant that Woolworth would be required to pay California taxes on income earned by Woolworth Canada as well as Woolworth U.S., because of the determination that the two companies were not really separate but rather were "unitary" in their operation and in their economic impact on the State of California.

After pursuing appropriate administrative remedies, appellant brought this action for a refund of taxes paid pursuant to the respondent board's determination. The court below determined that the two Woolworths were engaged in a unitary enterprise and were properly treated as such for California franchise tax purposes. Woolworth U.S. appeals, challenging this determination. We agree with appellant, and therefore reverse.

I

The facts were largely stipulated to by the parties. Woolworth Canada was incorporated in 1907 under the Revised Statutes of Canada, 1906, as a Canadian corporation. At that time its name was E. P. Charlton & Co., Limited. Appellant Woolworth U.S. was incorporated in 1911 under the laws of the State of New York. In 1912, Woolworth U.S. acquired all the stock in E. P. Charlton & Co., and the latter's name was changed to F. W. Woolworth Co., Limited. Woolworth Canada has been a wholly owned subsidiary of Woolworth U.S. since that time.

Woolworth U.S. operates a chain of retail variety stores in the United States, Virgin Islands and Puerto Rico. Since 1962, it has also operated a chain of discount department stores under the name of Woolco. For California tax purposes, Woolworth U.S. has treated this business in the United States as a unitary business. Woolworth Canada operates a substantially similar chain of retail variety and discount department stores in Canada.

During the subject time period, all of the directors of Woolworth Canada were also directors and officers of Woolworth U.S., and were, with one exception, also members of the executive committees of both Woolworth

U.S. and Woolworth Canada. Members of the board of directors and officers of Woolworth Canada were selected by the board of directors of Woolworth U.S., which selection was also subject to the approval of the chief executive officer of Woolworth U.S. It was stipulated that the board of directors of Woolworth U.S. "discussed matters pertaining to goals for both Woolworth [U.S.] and Woolworth Canada in respect of increasing sales, reducing expenses and maximizing profits." The executive committee of Woolworth Canada reviewed the opening and closing of stores, construction and layout plans, and real estate matters, including renewal of leases. The executive committee of Woolworth Canada consisted of five directors of Woolworth U.S. who were also directors of Woolworth Canada. Meetings of the boards of directors and executive committees of both Woolworth U.S. and Woolworth Canada were held in the executive offices of Woolworth U.S. in New York City. Woolworth Canada paid Woolworth U.S. all expenses incurred from the use of these offices in New York in connection with the business of Woolworth Canada.

It was stipulated that "[o]nly those officers and executive personnel of Woolworth Canada who were Canadian residents had direct responsibility for the day to day management of Woolworth Canada." Although there were occasional visits to Woolworth Canada by executives or directors of Woolworth U.S., these were few and of short duration. Similarly, Canadian officers of Woolworth Canada attended meetings with officers of Woolworth U.S. in New York only three times a year, for the purpose of exchanging information concerning the progress of Woolworth U.S. and Woolworth Canada.

General counsel for Woolworth U.S. was located in New York City, New York, while general counsel for Woolworth Canada was in London, Ontario, Canada. Financial auditing for Woolworth U.S. was performed by an auditing firm in New York City, while that for Woolworth Canada was performed by an auditing firm in Toronto. The accounting functions of Woolworth U.S. and Woolworth Canada were performed separately; the former in Milwaukee, Wisconsin, and the latter in Toronto, Canada. The billing and invoicing methods used by Woolworth U.S. and Woolworth Canada were different; the practice of Woolworth Canada was similar to that of other retail variety and discount department stores in both countries. Woolworth U.S. and Woolworth Canada maintained separate advertising departments in New York and Toronto, respectively. Woolworth U.S. and Woolworth Canada never exchanged any of their advertising material. The only exchange of information or data between Woolworth U.S. and Woolworth Canada pertaining to advertising matters occurred at meetings held approximately once a year in the executive offices of Woolworth U.S.

Woolworth U.S. did not purchase or receive any merchandise from Woolworth Canada during the relevant time period; neither did Woolworth Canada purchase or receive any merchandise, property, or money from Woolworth U.S. except for insignificant amounts of sample merchandise and vendor allowances. The board of directors of Woolworth U.S. determined whether or not Woolworth Canada would pay dividends to Woolworth U.S., and if so, the amount of the dividend. Almost $7 million in dividends were paid by Woolworth Canada to Woolworth U.S. in 1961, but only $7,000 in dividends were paid the next year. No dividends were paid by Woolworth Canada in the years 1963 or 1964.

Woolworth U.S. and Woolworth Canada each had its own staff of buyers, who separately purchased merchandise exclusively for the corporation employing them. The merchandise mix in each individual store of Woolworth U.S. and Woolworth Canada was determined by the needs of the local community in which that store was located. Woolworth U.S. did not set any quality standards or controls for any products sold by Woolworth Canada, and the approval of Woolworth U.S. was not required for Woolworth Canada to market any new products. Approximately 96 to 97 percent of the merchandise purchases of Woolworth U.S. were of domestic products; similarly, approximately 93 to 95 percent of Woolworth Canada's purchases of merchandise were purchases of domestic Canadian merchandise. Merchandise sold by Woolworth U.S. and Woolworth Canada was never commingled prior to sale by the two corporations, and the two companies did not have any common warehouses for their products.

Officers and directors of Woolworth Canada who were residents of the United States received all of their compensation and travel expenses from Woolworth U.S. Similarly, officers and directors of Woolworth U.S. who were Canadian residents received all of their compensation and travel expenses from Woolworth Canada, except for two individuals who, although Canadian residents, were directors only of Woolworth U.S. With these exceptions, both Woolworth U.S. and Woolworth Canada paid their own employees, and neither corporation paid the employees of the other corporation. During the years in question, there were no exchanges or transfers of employees between Woolworth U.S. and Woolworth Canada. Woolworth U.S. and Woolworth Canada each had their own personnel training programs, and neither trained personnel of or for the other.

During the subject time period, Woolworth U.S. did not assist Woolworth Canada in negotiating loans of any kind, although such loans and financing for Woolworth Canada had to be approved by Woolworth U.S. before taking effect. With the exception of one loan by Woolworth U.S. to Woolworth Canada in 1933, the principal amount of which had been paid back in 1957,

Woolworth Canada never requested nor received any loans from Woolworth U.S. However, on June 23, 1965, Woolworth U.S. gave a guarantee covering all indebtedness of Woolworth Canada existing on or after that date.

Woolworth U.S. and Woolworth Canada each separately determined for itself which trademarks and trade names to adopt and use, and each owned its own trademarks. No patents, trademarks, trade names or product designs were jointly held or owned by Woolworth U.S. and Woolworth Canada.

Woolworth U.S. and Woolworth Canada each owned its own real and personal property, and no property of one corporation was rented, leased or otherwise in the possession of the other, except to the extent that the executive officers of Woolworth U.S. in New York City were used for some functions of Woolworth Canada. Real estate transactions on the part of Woolworth Canada were performed separately, although informational reports on the current status of its real estate transactions were submitted on a quarterly basis by Woolworth Canada to Woolworth U.S.

The two companies maintained separate construction departments, whose functions included the drawing of plans, preparation and execution of contracts, and supervision of construction of retail stores in their respective countries. All construction plans for stores of Woolworth Canada had to be submitted to the executive office construction department of Woolworth U.S. for approval; thereafter, monthly progress reports on Woolworth Canada construction projects were sent to the Woolworth U.S. executive office construction department.

Woolworth U.S. and Woolworth Canada operated their customer credit services on an entirely separate basis. Woolworth U.S. financed its own customer credit revolving charge and installment credit accounts. Woolworth Canada, on the other hand, did not finance its own customer credit accounts, but arranged to have them financed by an independent investment corporation.

Pursuant to legal requirements and generally accepted accounting principles, Woolworth U.S.'s financial statements consolidated the financial reports of all of the Woolworth subsidiaries, including those in Canada, Germany and Mexico. Woolworth U.S. required Woolworth Canada to make weekly sales reports, and monthly stock and expense reports.

## II

Appellant argues that the trial court decision must be reversed because of the subsequent decision by the United States Supreme Court in *F. W. Wool-*

*worth Co.* v. *Taxation & Revenue Dept.* (1982) 458 U.S. 354 [73 L.Ed.2d 819, 102 S.Ct. 3128]. Under that case, and other cases of the United States Supreme Court preceding it, the constitutional limitation on unitary tax treatment by state taxing authorities is set by the determination of whether " 'contributions to income [of the subsidiaries] result[ed] from functional integration, centralization of management, and economies of scale.' " (*Id.,* at p. 364 [73 L.Ed.2d at pp. 827-828]; *Mobil Oil Corp.* v. *Commissioner of Taxes* (1980) 445 U.S. 425, 438 [63 L.Ed.2d 510, 521, 100 S.Ct. 1223].) "If such 'factors of profitability' arising 'from the operation of the business as a whole' exist and evidence the operation of a unitary business, a State can gain a justification for its tax consideration of value that has no other connection with that State." (*F. W. Woolworth Co., supra,* 458 U.S. at p. 364 [73 L.Ed.2d at p. 828].) On the other hand, where the taxed business entity does not operate on a unitary basis, the due process and commerce clauses of the federal Constitution prohibit a state from using an income-based tax to "tax value earned outside its borders." (*ASARCO Inc.* v. *Idaho State Tax Comm'n* (1982) 458 U.S. 307, 315 [73 L.Ed.2d 787, 794, 102 S.Ct. 3103].)

In the *F. W. Woolworth Co.* case, the Supreme Court was faced with virtually the identical question before us. The only difference between that case and this is the identity of the state taxing authority seeking to assert its right to tax Woolworth Canada and Woolworth U.S. as part of the same "unitary" enterprise. In *F. W. Woolworth Co.,* the state was New Mexico. The State of California, respondent here, was not a party to the case before the United States Supreme Court, and therefore is not barred by principles of res judicata or collateral estoppel from asserting that the decision in that case is inapplicable to the facts and evidence presented to the court below. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 147-149, 197-198, 222, 234-236, pp. 3292-3294, 3335-3336, 3357, 3367-3369.) Although one who was neither a party nor in privity with a party to a previous action may assert the plea of collateral estoppel against a party or one in privity with a party to the prior adjudication (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 811-813 [122 P.2d 892]), the party *against whom* the plea of collateral estoppel or res judicata is asserted *must* have been a party or otherwise privy to the prior action. (4 Witkin, *op. cit. supra,* §§ 237-240, at pp. 3370-3373.) Thus, appellant Woolworth U.S. may not assert collateral estoppel or res judicata against the respondent in this case, which was not before the court in the intervening Supreme Court action.

Nevertheless, the United States Supreme Court was faced with the same issue, involving the same corporation. The facts and evidence stipulated to by the parties here do not differ significantly from those set forth by the Supreme Court in explaining its decision. The evidence in the record

before us reaffirms the Supreme Court's findings that Woolworth Canada's business was not integrated with that of its parent, Woolworth U.S. We conclude, as did the Supreme Court, that "[w]ith respect to 'who makes the decision for seeing to the merchandise, [store] site selection, advertising and accounting control, . . . [Woolworth Canada] performs these functions autonomously and independently of the parent company.' [Citation.]" (*F. W. Woolworth Co., supra,* 458 U.S. at p. 365 [73 L.Ed.2d at p. 828], fn. omitted.) Woolworth Canada and Woolworth U.S. have separate accounting and advertising departments, financial staffs, outside legal counsel and auditors. The evidence shows that there was no centralized purchasing, manufacturing, or warehousing of merchandise. Woolworth U.S. had no central personnel training school for its Canadian subsidiary, and Woolworth Canada was responsible for obtaining its own financing from sources other than Woolworth U.S. In short, in this case as in *F. W. Woolworth Co.,* "the record is persuasive that Woolworth's operations were not functionally integrated" with those of Woolworth Canada. (*Id.,* at pp. 365-366 [73 L.Ed.2d at p. 829].)

Similarly, we conclude that the degree of centralization of management between Woolworth U.S. and Woolworth Canada was no more than could be expected between any parent company and a wholly owned subsidiary. Although the evidence before this court does reveal that more of the officers of Woolworth Canada were current or former employees of Woolworth U.S. than had appeared to the Supreme Court from the record in the case before it, these differences do not eviscerate the continuing validity of the Supreme Court's finding that Woolworth U.S. and Woolworth Canada operated as distinct business enterprises at the level of full-time management. We conclude, as did the Supreme Court, that the operations of Woolworth U.S. and Woolworth Canada were independent and autonomous; that there was no rotation or exchange of personnel, and no training of personnel by Woolworth U.S. specifically to operate stores in Woolworth Canada; that there was no centralized program to transmit techniques, methods of merchandising, marketing principles, or other policies to Woolworth Canada; and that Woolworth Canada essentially operated its own business, using its own methods of operation. (*Id.,* at pp. 366-367 [73 L.Ed.2d at p. 829].) The Supreme Court recognized that there were obvious managerial links between the two companies, including interlocking boards of directors and frequent in-person, mail, telephone and teletype communication between the upper echelons of management, such as would be expected in the operation of a wholly owned subsidiary by a large parent company. (*Id.,* at pp. 368-369 [73 L.Ed.2d at p. 830].) This was not enough, however, to overcome the substantial evidence indicating that the two companies were not "unitary" in their fundamental operation. (*Ibid.*)

Respondent urges that the United States Supreme Court was not presented with an adequate record in *F. W. Woolworth Co.*, and that new evidence before this court shows that Woolworth U.S. and Woolworth Canada were indeed operated as a unitary business enterprise. Although it does appear that the evidence stipulated to below presents a closer case than the evidence cited by the Supreme Court, nevertheless we conclude that it fails to provide substantial evidence in favor of respondent. Contrary to respondent's arguments, the relation between Woolworth U.S. and Woolworth Canada was not as close as that between the parent and subsidiaries found in *Container Corp. of America* v. *Franchise Tax Bd.* (1983) 463 U.S. 159 [77 L.Ed.2d 545, 103 S.Ct. 2933], in which the Supreme Court recently found a unitary enterprise to exist for purposes of California state tax law and the United States Constitution. In *Container Corp.*, unlike this case, it was apparent that officials of the parent gave directions to the subsidiaries " 'for compliance with the parent's standard of professionalism, profitability, and ethical practices' " on a routine basis. (*Id.*, at p. 177 [77 L.Ed.2d at p. 561, 103 S.Ct. at p. 2946].) The "substantial mutual interdependence" between the parent and subsidiaries in *Container Corp.* was further shown by the parent's assistance to its subsidiaries in obtaining new and used equipment, in filling personnel needs that could not be met locally, in loaning funds to the subsidiaries, in giving "substantial" technical assistance to the subsidiaries, and in supervising and providing general guidance to the operations of the subsidiaries. (*Id.*, at p. 179 [77 L.Ed.2d at pp. 561-562, 103 S.Ct. at p. 2947].) In each of these respects this case differs substantially from *Container Corp.*

In sum, there was no integration or unitary operation between Woolworth U.S. and Woolworth Canada in the sense in which the United States Supreme Court has used those terms. Rather, Woolworth Canada operated a "discrete business enterprise" (*Mobil Oil Corp., supra,* 445 U.S. at p. 439 [63 L.Ed.2d at p. 522]), without any "umbrella of centralized management and controlled interaction." (*Exxon Corp.* v. *Wisconsin Dept. of Revenue* (1980) 447 U.S. 207, 224 [65 L.Ed.2d 66, 81, 100 S.Ct. 2109].) To paraphrase the Supreme Court, California is attempting in this case to reach "extraterritorial values" wholly unrelated to the business of Woolworth stores in California. "As a result, a 'showing has been made that income unconnected with the unitary business has been used in the' levy of the [California] tax. [Citation.] We conclude that this tax does not bear the necessary relationship ' "to opportunities, benefits, or protection conferred or afforded by the taxing State. [Citation.]" ' [Citations.]" (*F. W. Woolworth Co., supra,* 458 U.S. at p. 372 [73 L.Ed.2d at pp. 832-833].) California's tax thus fails to meet established United States constitutional due process standards.

The judgment is reversed with directions to enter judgment for appellant.

White, P. J., and Anderson, J., concurred.

A petition for a rehearing was denied November 15, 1984, and respondent's petition for a hearing by the Supreme Court was denied January 24, 1985. Bird, C. J., was of the opinion that the petition should be granted.