[No. B041706. Second Dist., Div. Four. May 22, 1990.]

MOLE-RICHARDSON COMPANY, Plaintiff and Respondent, v. FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, for Defendant and Appellant.

Loeb & Loeb, John S. Warren and Andrew S. Garb for Plaintiff and Respondent.

Ajalat & Polley, Charles R. Ajalat, Terry L. Polley, Richard J. Ayoob, Latham & Watkins, Joseph A. Wheelock, Jr., Albert R. Rodriguez and Dwight M. Horii as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

TODD, J.*—Appellant Franchise Tax Board appeals from a judgment granting refund of corporate franchise taxes paid for income years 1972

---

* Assigned by the Chairperson of the Judicial Council.

through 1975 by respondent Mole-Richardson Company. The question presented is whether under the factual circumstances of this case the activities of a corporation with diverse business enterprises carried on both within and without the state constitute one unitary business for income apportionment purposes. We hold that they do and affirm the judgment.

The case was submitted on stipulated facts and uncontradicted testimony that may be summarized as follows:

Mole-Richardson Company is a California corporation with its principal office in Los Angeles. All of the stock is owned by Parker family trusts. The Parker family consists of Warren K. Parker, his wife, their four sons and two daughters. Warren K. Parker is president and chief executive of the corporation.

During the period in question, the corporation was engaged in the business of design, manufacture, rental and sale of lighting equipment for motion picture and television studios and still photographers. This business was based in Hollywood, California. The corporation was also engaged in farm and ranch operations which included ownership of farm and ranch properties in Colorado, the breeding and raising of cattle and horses, as well as horse racing. Horses retained for racing were trained in California and raced at tracks in California and the Midwest. The corporation operated an insurance agency in Colorado which handled ranch and farm insurance only, including "animal mortality insurance." It did not service any of the insurance needs of the lighting business.

Mole-Parker Enterprises (Enterprises) is a separate California corporation, all of the stock of which is owned by members of the Parker family and the Parker family trusts. During the period in question its only activity was the ownership of real property in California and Colorado, none of which was used in Mole-Richardson's lighting business. Mole-Richardson Rentals (Rentals), a wholly owned subsidiary of the corporation, was engaged in the rental of motion picture lighting equipment produced by respondent.

Certain operational activities of respondent, as well as those of Enterprises and Rentals, were conducted entirely at the corporation's headquarters in Hollywood. These included accounting, purchasing, advertising, the maintenance of personnel records, and processing payroll and expenses payments. Employee group insurance and pension programs were combined

for all the operations and administered in Hollywood. All operations were covered by a single policy of liability insurance.

All of the activities of Mole-Richardson Company, Mole-Parker Enterprises and Mole-Richardson Rentals were under the direct supervision of Warren K. Parker who was based in the Hollywood office. With respect to the Colorado operation, he negotiated and concluded all real property purchases with the assistance of attorney David A. Parker, his brother. Warren was directly involved in the design and construction of all new buildings in Colorado as well as the ranch irrigation systems. He usually negotiated and approved the purchase of breeding stocks and farm implements and the lease of farm property. He had daily telephone contact with the Colorado ranch and farm operation and visited the Colorado properties one to four times a year staying a week to ten days. Warren's son Lawrence M. Parker, also based in Hollywood, was corporate director and sales manager and in charge of the thoroughbred horse operations carried on in Colorado and California. Philip Flickinger was the chief financial officer for all operations and from the Hollywood office processed the payment of all bills for the farm and ranch operation, supervised preparation of the payroll, administered the employee benefit programs, and arranged the liability insurance coverage. Both Lawrence M. Parker and Philip Flickinger were under the direct supervision of Warren K. Parker.

During the period in question there was a foreman at the Colorado ranch who carried out orders received from Warren K. Parker. None of the employees in Colorado had anything to do with the Hollywood lighting business. A Parker son, Peter K. Parker, was "ranch manager" but he relied at all times on the advice and consent of his father and had no significant independent authority over ranch operations.

The principal bank account for the corporation was maintained in Hollywood. A separate account was maintained in Colorado in the name of Mole-Richardson Farms on which the foreman and Peter K. Parker had authority to sign. During 1975 most of the checks from this account were for less than $200.

For the 1972, 1973, 1974 and 1975 tax years respondent filed its California franchise tax returns on the basis of a combined report which treated the income from all operations of the light business, farm, insurance agency, Rentals and Enterprises as a unitary business. For each of these years the corporation also filed Colorado corporate tax returns treating all of its activities and those of Rentals and Enterprises as one unitary business.

Appellant Franchise Tax Board determined that respondent was engaged in two unitary businesses, the "light group" consisting of the light manufacturing operation and rentals and the "farm group" consisting of the farm, insurance agency and Enterprises. It therefore recomputed respondent's income tax liability, applying separate apportionment formulas to the income of each group and assessed the additional taxes. These additional taxes are the subject of this lawsuit.

The trial court concluded from the evidence that a single unitary basis should be applied and granted judgment to Mole-Richardson Company. The Franchise Tax Board appealed the judgment.

## DISCUSSION

■■■ Appellant contends that substantial functional integration did not exist between taxpayer's lighting business and farm business and "the trial court's failure to consider whether substantial functional integration existed between the two groups resulted in a unitary finding based upon an incorrect legal standard, . . ."

This case was presented to the trial court upon stipulations of fact and oral and documentary evidence which supplemented the stipulations. ■■■ As there was no conflict in the evidence the decisive facts are undisputed and we are confronted with questions of law and not bound by findings of the trial court. (*Container Corp. of America* v. *Franchise Tax Bd.* (1981) 117 Cal.App.3d 988, 993 [173 Cal.Rptr. 121], affd. 463 U.S. 159 [77 L.Ed.2d 545, 103 S.Ct. 2933]; *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 893-894 [122 Cal.Rptr. 249]; *Chase Brass & Copper Co.* v. *Franchise Tax Bd.* (1970) 10 Cal.App.3d 496, 502 [95 Cal.Rptr. 805], cert. den. 400 U.S. 961 [27 L.Ed.2d 381, 91 S.Ct. 365].)

A corporate taxpayer's income is subjected to apportionment "[to] be measured by the net income derived from or attributable to sources within this state" when it "is derived from or attributable to sources both within and without the state." (Rev. & Tax. Code, § 25101.) ■■■ The unitary business formula apportionment method calculates the local tax base by first defining the scope of the unitary business, of which the enterprise's activities in the taxing jurisdiction form one part, and then apportioning the income of that unitary business between the taxing jurisdiction and the rest

of the world based on the objective measures of the corporation's activities within and without the jurisdiction. (*Container Corp.* v. *Franchise Tax Bd.* (1983) 463 U.S. 159, 165 [77 L.Ed.2d 545, 553, 103 S.Ct.2933].) A state may not tax a "unitary business" unless some part of it is conducted in the state and the out-of-state activities are related in some concrete way to the in-state activities. (*Id.* at p. 166 [77 L.Ed.2d at pp. 553-554].)

Appellant initially contends that distinct business activities may be combined "only if they form an inseparable [unitary] business." Appellant has cited no authority for equating "unitary" with "inseparable," and indeed we have found no authority to support this assertion. ■ Still, it is clear that there must be a sufficient relationship between the activities conducted within the state and those outside the state to justify a finding that the business is unitary for tax purposes. The question we consider in this case is the nature and extent of that relationship.

A general test to determine whether a business is unitary is " '[i]f the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, . . .' " (*Superior Oil Co.* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 406, 412 [34 Cal.Rptr. 545, 386 P.2d 33]; *Chase Brass & Copper Co.* v. *Franchise Tax Bd., supra,* 10 Cal.App.3d 496, 501, cert. den. 400 U.S. 961.) A three-part test was set out in *Butler Brothers* v. *McColgan* (1941) 17 Cal.2d 664, 678 [111 P.2d 334], affirmed 315 U.S. 501 [86 L.Ed. 991, 62 S.Ct. 701], and remains viable today: "[T]he unitary nature of appellant's business is definitely established by the presence of the following circumstances: (1) Unity of ownership; (2) Unity of operation as evidenced by central purchasing, advertising, accounting and management divisions; and (3) Unity of use in its centralized executive force and general system of operation."

Title 18, section 25120 of the California Code of Regulations sets forth criteria to evaluate the unitary nature of an enterprise.[1] Appellant argues

---

[1] Title 18, section 25120, subdivision (b) of the California Code of Regulations provides in relevant part:

"A taxpayer may have more than one 'trade or business.'

" . . . . . . . . . . . . .

"The determination of whether the activities of the taxpayer constitute a single trade or business or more than one trade or business will turn on the facts in each case. In general, the activities of the taxpayer will be considered a single business if there is evidence to indicate that the segments under consideration are integrated with, dependent upon or contribute to each other and the operations of the taxpayer as a whole. The following factors are considered to be good indicia of a single trade or business, and the presence of any of these factors creates a strong presumption that the activities of the taxpayer constitute a single trade or business:

that recent United States Supreme Court holdings require a greater showing than that set forth in section 25120 to justify unitary treatment. We therefore review the cases cited by appellant to determine whether they preclude unitary treatment in this case.

In *Mobil Oil Corp.* v. *Commissioner of Taxes* (1980) 445 U.S. 425, 441-442 [63 L.Ed.2d 510, 523-524, 100 S.Ct. 1223] (*Mobil*), taxpayer, a New York corporation with its principal place of business and "commercial domicile" in New York, was engaged in an integrated petroleum business. The business it conducted in Vermont, the taxing state, was confined to sale of petroleum products. The United States Supreme Court considered the power of a state to include dividend income from taxpayer's subsidiaries and affiliates which operated abroad. The court recognized that when business activities of the source of income have "nothing to do" with activities of the recipient in the taxing state, due process considerations might preclude apportionability because there would be no underlying unitary business. The court found that the subsidiaries and affiliates engaged in business activities that formed part of taxpayer's integrated petroleum enterprise. (*Id.* at p. 435 [63 L.Ed.2d at pp. 519-520].) "So long as dividends from subsidiaries and affiliates reflect profits derived from a functionally integrated enterprise, those dividends are income to the parent earned in a unitary business. One must look principally at the underlying activity . . . to determine the propriety of apportionability." (*Id.* at p. 440 [63 L.Ed.2d at p. 523].) Stated another way the court held that proof of a functionally integrated enterprise created a presumption of a unitary business and it was up to the taxpayer to establish that the specific income was unrelated to the sale of products in the taxing state. In the absence of such proof the state was entitled to conclude that there was a sufficient nexus to include such income for apportionment purposes.

Appellant has also cited *ASARCO Inc.* v. *Idaho State Tax Comm'n* (1982) 458 U.S. 307 [73 L.Ed.2d 787, 102 S.Ct. 3103] (*ASARCO*). In that case taxpayer was a New Jersey corporation headquartered and domiciled

---

"(1) Same type of business . . . .

"(2) Steps in a vertical process . . . .

"(3) Strong centralized management: A taxpayer which might otherwise be considered as engaged in more than one trade or business is properly considered as engaged in one trade or business when there is a strong central management, coupled with the existence of centralized departments for such functions as financing, advertising, research, or purchasing. Thus, some conglomerates may properly be considered as engaged in only one trade or business when the central executive officers are normally involved in the operations of the various divisions and there are centralized offices which perform for the divisions the normal matters which a truly independent business would perform for itself, such as accounting, personnel, insurance, legal, purchasing, advertising, or financing."

in New York, engaged in mining, smelting and refining metals. It operated a mine in Idaho which constituted about 2.5 percent of the total business of the corporation. Idaho tried to include an apportioned share of dividend and interest income and capital gains the parent received from its subsidiaries which had no connection with the state. Idaho recognized that the links were insufficient to justify unitary treatment but urged the court to expand the concept of "unitary business" to cover "corporate purpose." (*Id.* at pp. 325-326 [73 L.Ed.2d at pp. 800-801].) The Supreme Court rejected this concluding that such an interpretation would destroy the concept of "unitary business" because all operations could be said to be for "corporate ·purposes" on the theory that the corporation is required to earn money to continue to operate. The court cited *Mobil* in refusing to accept a definition of "unitary business" that would permit a nondomiciliary state to apportion and tax dividends where business activities of the payor of dividends have nothing to do with the activities of the recipient in the taxing state. (458 U.S. at p. 327 [73 L.Ed.2d at p. 802].)

*Mobil* and *ASARCO* do not support appellant's contention as the facts in this case can be clearly distinguished. Both *Mobil* and *ASARCO* considered the power of a taxing state to reach activities of a nondomiciliary parent corporation outside the state. ██ In this case we consider California's authority to give unitary treatment to activities of a corporation domiciled in California with diverse business enterprises conducted within and without the state. It cannot seriously be argued from the evidence in this case that the business activities in Colorado had "nothing to do" with the business activities of respondent in California. Rather, the question is, does the fact that the business conducted within California is primarily lighting while that outside California is primarily ranching preclude unitary treatment when both businesses are managed in California?

██ Appellant argues that the existence of a unitary business must be determined under criteria established in the Woolworth cases.[2] In

---

[2] Appellant has made numerous citations to decisions of the California State Board of Equalization in support of its position. While we agree that the board is an administrative body and has no judicial power (*Carson Estate Company* v. *State Board of Equalization* (1936) 6 Cal.2d 779, 780 [59 P.2d 122], we recognize that contemporary administrative constructions of statutes and regulations are entitled to great weight. (*Borchers* v. *Franchise Tax Board* (1984) 151 Cal.App.3d 504, 507-508 [198 Cal.Rptr. 734].) Appellant has pointed out that opinions of the Board of Equalization reflect the board's attempt to apply the standards required by judicial opinions. We are satisfied that it is our task to determine whether the board has properly interpreted the relevant statutes and regulations, for " 'while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts.' " (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].)

*F.W. Woolworth Co.* v. *Taxation & Revenue Dept.* (1982) 458 U.S. 354 [76 L.Ed.2d 819, 102 S.Ct. 3128], the court considered whether New Mexico could justify apportionment of income from dividends, "hedging" transactions and other tax credit "income" which accrued to taxpayer from its wholly owned foreign subsidiaries. In that case taxpayer, a New York corporation, conducted 0.5 percent of its gross retail sales business in New Mexico. The court recognized that even when there is no other connection with the state, a taxing state can analyze the factors of profitability arising from the operation of the business as a whole. The court concluded that taxation is justified if contributions to the income of the subsidiaries result from " 'functional integration, centralization of management, and economies of scale' " of the business as a whole. (*Id.* at p. 364 [73 L.Ed.2d at p. 828].) In evaluating whether functional integration existed between the parent and subsidiary the court noted that each subsidiary made autonomous and independent decisions regarding site selection, advertising and accounting. Each had its own outside counsel. There was no centralized purchasing, manufacturing or warehousing. There was no central personnel training. Each subsidiary was responsible for its own financing from sources other than the parent. (*Id.* at pp. 365-366 [73 L.Ed.2d at pp. 828-829].) The court also noted there was no centralization of management and each subsidiary operated as a distinct business enterprise at the level of full-time management. (*Id.* at p. 368 [73 L.Ed.2d at p. 830].) Based on the evidence presented, the court found each foreign subsidiary operated a " 'discrete business enterprise' " with a notable absence of any " 'umbrella of centralized management and controlled interaction' " and could not be considered a unitary operation. (*Id.* at p. 372 [73 L.Ed.2d at p. 832].)

A similar situation has been considered by the California court in a case involving the taxation of F.W. Woolworth Company by California. In *F.W. Woolworth Co.* v. *Franchise Tax Bd.* (1984) 160 Cal.App.3d 1154 [207 Cal.Rptr. 149], the court considered whether California could include by apportionment income of Woolworth, Canada, a wholly owned subsidiary of the taxpayer. In discussing whether the two corporations were functionally integrated the court noted that each had separate general counsel, separate auditing and accounting departments, different billing and invoicing, separate advertising, buyers and quality standards. There was no commingling of merchandise or warehousing and each purchased more than 90 percent of its goods from its own domestic suppliers. Each conducted separate personnel training and had separate ownership of trademarks and trade names.

The court concluded that the managerial links between the two enterprises were not sufficient to overcome the substantial evidence that the two

companies were not "unitary" in their fundamental operation and that California was therefore attempting to reach "extraterritorial values" wholly unrelated to the business of Woolworth stores in California. (160 Cal.App.3d at pp. 1160-1162.)

Appellant's position seems to be based on the view that "functional integration" refers to a new and different concept with which a business enterprise must be evaluated to justify unitary treatment. Although the term is not specifically defined in the cases cited, a review of the analyses employed makes it clear that the determinative factors are the same as those set forth in title 18, California Code of Regulations, section 25120, as well as in the earlier California cases of *Butler Brothers* v. *McColgan, supra*, 17 Cal.2d 664, affirmed 315 U.S. 501, *Superior Oil Co.* v. *Franchise Tax Bd., supra*, 60 Cal.2d 406, and *Honolulu Oil Corp.* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 417 [34 Cal.Rptr. 552, 386 P.2d 40]. Those factors are "strong central management, coupled with the existence of centralized departments for such functions as financing, advertising, research, or purchasing" (Cal. Code Regs., tit. 18, § 25120, subd. (b)) and "unity of ownership"; "unity of operation as evidenced by central purchasing, advertising, accounting and management divisions"; and "unity of use in its centralized executive force and general system of operation." (*Butler Brothers* v *McColgan, supra*, 17 Cal.2d at p. 678.)

 The evidence in this case established that respondent had a strong centralized management in that all major business decisions were made by Warren K. Parker. All accounting, payroll, insurance, pension plans, primary banking, major purchasing and advertising for the Colorado business as well as the California business were conducted at the Hollywood offices. In managing certain operations from one location the enterprise was able to realize cost savings, resulting in economies of scale. Real property in Hollywood was mortgaged to fund improvement of the ranch property in Colorado. One California attorney acted as general counsel for all businesses. Though the businesses were basically a "family operation" this would not diminish the unitary nature of the enterprise.

We are satisfied that based on the evidence in this case the operations of respondent were functionally integrated and respondent was entitled to tax treatment as one unitary business for the tax years 1972 through 1975. The

judgment of the trial court is affirmed. Costs are awarded to respondent on appeal.

George, Acting P. J., and Goertzen, J., concurred.

A petition for a rehearing was denied June 13, 1990, and on June 21, 1990, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 8, 1990.